UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA RENEE BASS,<br><br>            Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | Case No. 1:21-cv-00495-CDB (SS)<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING ACTION FOR FURTHER PROCEEDINGS UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>(Doc. 13) |

Plaintiff Rebecca Renee Bass ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 13). Defendant filed an opposition to Plaintiff's brief and Plaintiff replied. (Docs. 16, 17). The matter is currently before the Court on the Administrative Record (Doc. 10) and the parties' briefs, which were submitted without oral argument.[1]  For the reasons set forth below, the Court remands this case to the Commissioner.

## BACKGROUND[2]

Plaintiff applied for DIB on September 14, 2017. (Administrative Record "AR" 39). On

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge and this action has been assigned to the undersigned for all purposes pursuant to 28 U.S.C. 636(c)(1). (Doc. 12).

[2] There is no substantial dispute about the ALJ's findings at steps one through four of the sequential analysis.  Thus, discussion of the record will be limited to the extent that it is relevant to Plaintiff's challenges to the ALJ's determination at step five.

September 30, 2017, Plaintiff also applied for SSI. *Id.* Her claims were denied initially on December 6, 2017, and upon reconsideration on February 20, 2018. *Id.* Following the denial on reconsideration, Plaintiff requested a hearing which was held on March 11, 2020. (AR 62). An impartial vocational expert ("VE") appeared at the hearing. In addition, Plaintiff was accompanied by two representatives, one of which was an attorney representative, and the other a non-attorney. *Id.*

At all times relevant to the ALJ's adjudication, Plaintiff was 50 years old, which is defined as an individual "closely approaching advanced age." (AR 51). Plaintiff has a high school education. Plaintiff also has past relevant work as a construction worker I composite job with tank truck driver as well as a retail store manager. (AR 52).

At step one of the five step sequential process under 20 C.F.R 404.1520(a), the ALJ found that Plaintiff met the insured status requirements of the Social Security Act ("SSA"), through March 31, 2020. (AR 42). At step two of the sequential evaluation, the ALJ found that Plaintiff' has "severe impairments" of myeloproliferative syndrome with erythrocytosis and thrombocytosis, umbilical hernia, gastro-esophageal reflux disease, diabetes mellitus with neuropathy, cervical degenerative disc, joint disease with history of cervical laminectomy and fusion at C4-7, as well as lumbar degenerative disc disease. (AR 42). The ALJ found that Plaintiff's residual functional capacity ("RFC") is as follows:

> I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404. 1567 (b), and 416.967 (b), including lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and walking for six hours; and sitting for six hours in an eight-hour workday, with the following restrictions: she should be able to stand, stretch, and move around every 2 hours for 10-15 minutes falling within the normal breaks and lunch period. She can never crawl, kneel, or climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, crouch, and climb ramps and stairs. She can occasionally reach overhead with her bilateral upper extremities. She can never forcefully grip or torque with her bilateral upper extremities. She must avoid even moderate exposure to extreme cold, humidity, and vibration. She must avoid workplace hazards such as working at unprotected heights, operating fast or dangerous machinery, or operating commercial vehicles. <u>She can perform simple, routine, and repetitive tasks</u>.

(AR 44) (emphasis added).

At step five, the ALJ found that although Plaintiff could not work in in her past occupations of construction worker/tank truck driver and retail manager, there were enough jobs that exist in significant numbers in the national economy that Plaintiff could perform. (AR 51-52). The ALJ found that Plaintiff's ability requirements of light work were impeded by her limitations. (AR 52). The ALJ asked the VE to address the extent to which Plaintiff's additional limitations erode the unskilled light work occupational base, and whether there existed jobs in the national economy in significant numbers for Plaintiff's age, education, work experience and RFC. *Id*. The VE testified that Plaintiff could work as a cashier, DOT Number 211.462-010, with 574,000 jobs nationally. The VE also testified that Plaintiff could work as a ticket seller, DOT Number 211.467-030, with 15,000 jobs, and assembler, small parts, DOT Number 706.684-022, with 21,000 jobs nationally. The ALJ relied on the VE's testimony and found that Plaintiff was able to find work in these three occupational fields that existed in significant numbers in the national economy. Accordingly, the ALJ found that plaintiff was not disabled. (AR 52).

## LEGAL STANDARD

**A. The Disability Standard**

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) and 1381(a). An individual is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment …"[3] *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). To achieve uniformity in the decision-making process, the Social Security regulations set out a five-step sequential evaluation process to be used in determining if an individual is disabled. *See* 20 C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004). Specifically, the ALJ is required to determine:

(1) whether a claimant engaged in substantial gainful activity during the period of

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrated by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

3

>alleged disability, (2) whether the claimant had medically determinable "severe" impairments, (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the RFC to perform past relevant work and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.

*Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on a claimant at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citing *Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 689 (9th Cir. 2009)).

Before making the step four determinations, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e). The RFC is the most a claimant can still do despite their limitations and represents an assessment based on all relevant evidence. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. § 416.920(e); § 416.945(a)(2). *E.g.*, *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) ("These regulations inform us, first, that in assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe."). The RFC is not a medical opinion. 20 C.F.R. § 404.1527(d)(2). Rather, it is a legal decision that is expressly reserved to the Commissioner. 20 C.F.R. § 404.1546(c); *see Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").

At step five, the burden shifts to the Commissioner to prove that Plaintiff can perform other work in the national economy given the claimant's RFC, age, education, and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). To do this, the ALJ can use either the Medical-Vocational Guidelines or rely upon the testimony of a VE. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony and for resolving ambiguities.'" *Ford*, 950 F.3d at 1149 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

4

**B. Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, a court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

"Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotations and citations omitted). "If the evidence 'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Ford*, 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. *Stout*, 454 F.3d at 1055-56. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determinations." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (quotation and citation omitted). The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

**DISCUSSION**

Plaintiff advances a single issue for the Court's review: that the ALJ erred at step five of

the sequential analysis when she adopted the jobs identified by the VE without first resolving the conflicts between the VE's testimony and the occupational restrictions in the Dictionary of Occupational Titles ("DOT").

### A. Standard of Law

At step five of the sequential evaluation process, the Commissioner must "identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [her] identified limitations." *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015) (citation and internal quotes omitted). The ALJ first assesses a claimant's RFC and then considers potential occupations that the claimant may be able to perform with reference to the DOT. *Id.*; *Valentine*, 574 F.3d at 689; 20 C.F.R. § 416.920(g).

Hypothetical questions posed to the VE must set out all the limitations and restrictions of the claimant, as supported by the medical record. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). If the ALJ solicits testimony by the VE, the VE must identify a specific job or jobs in the national economy that have "requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy." *Garcia v. Comm'r of Soc. Sec.*, No. 1:22-cv-01479-SAB, 2023 WL 5917996, at *10 (E.D. Cal. Sept. 11, 2023) (citing 20 C.F.R. § 404.1566(b)); *Burkhart v. Bowen*, 856 1335, 1340 n.3 (9th Cir. 1988).

"The DOT lists maximum requirements of occupations generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00-4p, *available at* 2000 WL 1898704 (Dec. 4, 2000). "The term 'occupation,' as used in the DOT, refers to the collective description of those jobs. Each occupation represents numerous jobs." *Id*.

Because the DOT is not comprehensive, "[i]ntroduction of evidence of the characteristics of specific jobs available in the local area through the testimony of a [VE] is appropriate, even though the job traits may vary from the way the job title is classified in the DOT." *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). Indeed, a VE might be more knowledgeable about a particular job's requirements due to their experience in job placement or career counseling. SSR 00-4p, at *2. Therefore, a VE may be able to offer more specific information about jobs or occupations than provided in the DOT. *Id*. The ALJ permissibly may rely on VE testimony

6

regarding "(1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy." *Tackett*, 180 F.3d at 1101.

If there is an apparent unresolved conflict between VE evidence and the DOT, the ALJ is required to reconcile the inconsistency. The ALJ may accomplish this by providing a reasonable explanation for the conflict before relying on the VE to support a determination or decision about whether the claimant is disabled. SSR 00-4p, at *4; *see also Johnson*, 60 F.3d at 1435 (holding that if the ALJ relies on VE testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation"). "An example of a conflict between the DOT and a VE's testimony is when the DOT's description of a job includes activities a claimant is precluded from doing, and the VE nonetheless testifies that the claimant would be able to perform that job." *Martinez v. Colvin*, No. 1:14-cv-1070-SMS, 2015 WL 5231973, at *4 (E.D. Cal. Sept. 8, 2015) (citations omitted); *Zavalin*, 778 F.3d at 846 (noting an apparent conflict where "expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle"). The ALJ must inquire on the record during the disability hearing as to whether there is an inconsistency. SSR 00-4p, at *4; *Massachi v. Astrue*, 486 F.3d 1149 1153-54 (9th Cir. 2007). In addition, neither the DOT nor the VE's evidence "trumps" the other when there is a conflict. Instead, the ALJ must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE's testimony rather than the DOT information. SSR 00-4p, at *2.

If the ALJ fails to resolve an apparent inconsistency, the Court is left with a "gap in the record that precludes [it] from determining whether the ALJ's decision is supported by substantial evidence." *Zavalin*, 778 F.3d at 846. However, such a deficiency may amount to harmless error if there is no conflict, or if the VE provides "sufficient support for her conclusion so as to justify any potential conflicts." *Massachi*, 486 F.3d at 1154 n.19.

### B. Analysis – The Cashier and Ticket Seller Occupations

Plaintiff argues there are unresolved apparent conflicts related to her reasoning level and the reasoning level demands of the cashier and ticker seller occupations identified by the VE. She argues these occupations implicate DOT descriptions which exceed her mental/educational

1    limitations and the ALJ did not resolve that discrepancy.

2    During the hearing, the VE testified that although a hypothetical individual that had the

3    same RFC as Plaintiff could not perform Plaintiff's past relevant work, that person could perform

4    the jobs of cashier, DOT No. 211.462-010; ticket seller, DOT No. 211.467-030; and small parts

5    assembler, DOT No. 706.684-022. (AR 82). The VE thereafter was examined by Plaintiff's

6    attorney, who asked:

> Q    Okay, and limitation to a simple, repetitive, routine tasks. Would that preclude the ability to carry out detailed, oral, and written instructions?
>
> A    Yes.

(AR 83). The RFC assigned by the ALJ to Plaintiff was limited to "simple, routine, and repetitive tasks." Plaintiff argues that there is an apparent inconsistency between this RFC limitation and the reasoning level required by the occupations identified by the VE. Specifically, Plaintiff asserts that a limitation to simple, repetitive, routine tasks is consistent with the DOT's "Reasoning Development Level 1," which describes jobs that entail carrying out "simple one or two step instructions." *See* DOT, Appx. C, *available at* 1991 WL 688702 (Jan. 1, 2016).

The Court of Appeals held in *Zavalin* that there is an apparent conflict between an RFC limitation to perform "simple, repetitive tasks" and the DOT's "Reasoning Development Level 3," which implicates the ability to "carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations " *Zavalin*, 778 F.3d at 847 (citing DOT, App. C, 1991 WL 688702).

The Commissioner concedes that there are conflicts between the Plaintiff's RFC and the occupations of cashier and ticket seller, which the Commissioner likewise concedes require a Reasoning Development Level 3. (Doc. 16 p. 6); *see Cashier II*, DOT 211.462-010, *available at* 1991 WL 671840 (Jan. 1, 2016); *Ticket Seller*, DOT 211.467-030, available at 1991 WL 671853 (Jan.1, 2016). However, the Commissioner argues that this case is distinguishable from *Zavalin*, which involved a claimant who had medical problems, limited education, and non-existent work history. *See Zavalin*, 778 F.3d at 843. Specifically, the Commissioner notes Plaintiff, in contrast to the plaintiff in *Zavalin*, had one year of college education, owned a business, supervised

employees, and had past relevant work in occupation fields that required higher reasoning levels. The Commissioner argues that there is no apparent error since Plaintiff has previously demonstrated that she could perform occupation requiring a reasoning level of three and above. (Doc .16 pp. 7-8); (AR 63, 81).

Although the Commissioner's argument might reconcile this apparent conflict in other cases, "[l]ong-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ — not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1225-26 (9th Cir. 2006) (citation omitted). For an ALJ to rely on a job description in the DOT that does not comport with a claimant's limitations, "the ALJ must definitively explain this deviation." *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001). The ALJ did not attempt to reconcile this discrepancy in her ruling.

During the hearing, the ALJ presented the VE with a hypothetical person limited to simple, routine or repetitive tasks because of the person's pain symptoms and the side-effects of her medications. (AR 82). Under questioning by Plaintiff's attorney, the VE confirmed that such a restriction would preclude the ability to carry out detailed, oral, and written instructions. (AR 83). The evidence cited by the Commissioner in its briefing as to why any error was harmless was not evidence relied upon by the ALJ; thus, it is not evidence this Court may consider to find harmless error. *See Zavalin*, 778 F.3d at 848 ("the ALJ did not rely on this evidence, and we cannot do so now to find the error harmless"). The Court finds that there is an apparent, unreconciled conflict between the VE's testimony and the reasoning level required for the cashier and ticket seller occupations, and that the error was not harmless. Thus, the Court declines to weigh Plaintiff's other assignments of error relating to those two occupations and her other limitations.

**C. Analysis – The Small Parts Assembler Occupation**

As for the third occupation identified by the VE (small parts assembler), Plaintiff first argues that there is an apparent conflict between what she characterizes as that occupation's associated reasoning level (the DOT's Reasoning Development Level 3, *see* Doc. 13 p. 7), which

implicates the ability to "carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations," and her RFC limitations to perform "simple, routine, and repetitive tasks." (Doc. 13 pp. 8-9). In support, Plaintiff cites the VE's acknowledgement of a conflict between the "simple, repetitive, routine tasks" limitation and one's ability to deal with detailed, oral and written instructions. (AR 83). However, the Commissioner correctly refutes Plaintiff's argument in noting that small parts assembler implicates only DOT Reasoning Development Level 2, which implicates a lesser reasoning ability: "to carry out detailed but <u>uninvolved</u> written or oral instructions." *Zavalin*, 778 F.3d at 847 (citing DOT, App. C, 1991 WL 688702).

"There is no appreciable difference between the ability to make simple decisions based on 'short, simple instructions' and the ability to use commonsense understanding to carry out 'detailed *but uninvolved* . . . instructions' which is what Reasoning Level 2 requires." *Ranstrom v. Colvin*, 622 F. App'x 687, 688 (9th Cir. 2015) (citations omitted). Indeed, numerous cases within the Ninth Circuit have held that the ability to perform simple and repetitive tasks is equivalent to level two reasoning. *See e.g., Kellina M. v. Comm'r of Soc. Sec.*, No. 3:22-cv-01997-YY, 2023 WL 6239638, at *3 (D. Or. Sept. 26, 2023); *John B. v. Comm'r of Soc. Sec.*, No. C22-510-BAT, 2023 WL 6845297, at *4 (W.D. Wash. Oct. 17, 2023); *Coleman v. Astrue*, No. CV 10-5641 JC, 2011 WL 781930, at *5 (C.D. Cal. Feb. 28, 2011); *Xiong v. Comm'r of Soc. Sec*, No. 1:09-cv-00398-SMS, 2010 WL 2902508, at *6 (E.D. Cal. July 22, 2010). Although there is an apparent conflict between Plaintiff's RFC limitations and the more demanding reasoning levels of the cashier and ticket seller occupations, the same is not true for the Reasoning Level 2 requirements. Thus, the Court finds no apparent conflict between Plaintiff's reasoning limitations and the reasoning requirements of a small parts assembler.

Separately, Plaintiff argues an unresolved conflict also exists between her RFC restriction to only occasional use of her bilateral extremities and the requirement for a small parts assembler requirement to frequently reach. *Assembler, Small Products I*, DOT 211.467-030, *available at* 1991 WL 679050 (Jan.1, 2016).

The terms "occasionally" and "frequently" are terms of art under the Social Security

10

1  regulations. *Correia v. Comm'r of Soc. Sec.*, No. 2:20-cv-01139-JDP (SS), 2023 WL 2058894, at
2  *7 (E.D. Cal. Feb. 16, 2023). The term "occasionally" means "from very little up to one-third of
3  the time," whereas "frequently" means "from one-third to two-thirds of the time." SSR 83-14,
4  1983 WL 31254, at *2 (Jan. 1, 1983).

5      Certain well-known occupations may lend themselves to a common-sense analysis. For
6  example, in *Gutierrez*, the Ninth Circuit evaluated whether a claimant's reaching restrictions were
7  in apparent conflict with the reaching requirements of a cashier. *Gutierrez v. Berryhill*, 844 F.3d
8  804, 807-808 (9th Cir. 2016). The Court found no apparent conflict between the occupation's
9  "frequent reaching" requirements and the plaintiff's reaching restriction of raising her right arm
10 no higher than shoulder level since it is generally known that cashiers do not reach overhead
11 frequently. *Id*.

12     In *Lamear*, the Ninth Circuit addressed the same apparent conflict analysis as in *Gutierrez*
13 but where the occupation at issue was more obscure than the occupation in *Gutierrez* (cashier).
14 *Lamear v. Berryhill*, 865 F.3d 1201, 1205-06 (9th Cir. 2017). In such a case, the *Lamear* Court
15 elaborated that based on "common experience," a claimant may perform an occupation at issue
16 only when it is "likely and foreseeable" that the claimant could undertake the occupation's
17 essential tasks notwithstanding her physical limitations. *Id*.

18     Here, the small parts assembler role does not readily lend itself to a "common experience"
19 analysis. *E.g., Trudy A. v. Kijakazi*, No. 3:20-CV-00233-CWD, 2021 WL 3711172, at *5 (D.
20 Idaho Aug. 20, 2021); *Hall v. Berryhill*, No. 3:16-cv-01699-JR, 2018 WL 1135705, at *12 (D.
21 Or. Mar. 2, 2018). The role encompasses the production of various small products such as ball
22 bearings, automobile locking unites, speedometers, condensers, distributors. DOT 706.684-022
23 *Assembler, Small Products I*, 1991 WL 679050 (1991). The occupation may entail use of a
24 variety of different tools like tweezers, tongs, bolts, screws, cements, riveting machines, welding
25 machines and broaches. *Id*.

26     The ALJ's ruling does not attempt to reconcile how Plaintiff could work as a small parts
27 assembler despite her RFC limitation to only occasional overhead reaching. Accordingly, this
28 Court is unable to conclude that it is "likely and foreseeable" Plaintiff could undertake the

1  occupation's essential tasks notwithstanding her physical limitations.[4]

## CONCLUSION AND ORDER

For reasons set forth above, the Court finds that the ALJ erred by failing to identify and resolve the apparent conflict between the VE's testimony and the associated DOT reasoning requirements for the cashier and ticket seller occupations. The Court further finds an unresolved apparent conflict between the VE's testimony and the DOT's reaching requirements for the small parts assembler occupation.

Based on the foregoing, the Court finds that substantial evidence and applicable law do not support the ALJ's conclusion, and IT IS HEREBY ORDERED:

1. Plaintiff's motion for summary judgment (Doc. 13) is GRANTED;
2. The decision of the Commissioner is reversed, and the matter is REMANDED for further proceedings consistent with this Order pursuant to Sentence Four of 42 U.S.C. § 405(g); and
3. The Clerk of Court is DIRECTED to enter judgment in favor of Plaintiff and against Defendant.

IT IS SO ORDERED.

Dated:   **December 22, 2023**                            _____
                                                          UNITED STATES MAGISTRATE JUDGE

---

[4] In her reply brief, Plaintiff newly assigns as additional error the ALJ's reliance on testimony by the VE that 21,000 jobs in the small parts assembler industry constitutes a "significant number" of jobs. (Doc. 17 p .3). However, Plaintiff did not raise this argument in her moving brief, and accordingly, it is waived and not considered by the Court.